AUSTIN *v.* ANCIENT ORDER OF GLEANERS.

1. APPEAL AND ERROR—CONFLICTING TESTIMONY—INSTRUCTIONS.
   In action against land contract vendor for conversion of chattel mortgaged property, verdict and judgment for plaintiff, assignee of defaulted vendee, is not disturbed on appeal, where testimony was decidedly conflicting and issue was submitted under a fair charge.

2. TROVER AND CONVERSION—POSSESSION—QUESTION FOR JURY.
   Defendant land contract vendor in action for conversion of chattel mortgaged property who claimed property had been taken pursuant to amicable termination of land contract conditioned upon voluntary surrender of farm and personal property thereon *held*, not entitled to directed verdict either at the close of plaintiff's proofs or at conclusion of all the testimony, where there was clearly a question of fact for the jury as to manner in which possession was obtained.

3. SAME—GREAT WEIGHT OF EVIDENCE.
   Verdict for plaintiff in action for conversion of chattel mortgaged property *held*, not against the great weight of the evidence.

Appeal from Clinton; Searl (Kelly S.), J. Submitted June 12, 1934. (Docket No. 100, Calendar No. 37,812.) Decided October 1, 1934.

Action by Charles W. Austin against the Ancient Order of Gleaners, a Michigan corporation, now Gleaner Life Insurance Society, a Michigan corporation, for conversion. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Smith, Hunter & Spaulding,* for plaintiff.

*H. P. Orr,* for defendant.

NORTH, J.  Plaintiff as the assignee of Calvin M. Parks brought this action to recover from defendant damages for the alleged unlawful conversion of personal property belonging to Mr. and Mrs. Parks. Prior to the assignment to plaintiff, Mrs. Parks had died leaving Mr. Parks the sole party in interest. On trial by jury plaintiff had verdict and judgment thereon.  In this appeal defendant asserts that the trial court committed error in denying defendant's motion for a directed verdict at the conclusion of plaintiff's testimony and again at the conclusion of all the testimony in the case.  In this connection defendant points out that it is essential to the maintenance of plaintiff's action in conversion that he show the taking of the personal property was wrongful and without consent of plaintiff's assignor, unless his consent was obtained by fraud or duress. It is defendant's claim that the testimony of plaintiff's assignor discloses that there was no such unlawful taking of the personal property.

The following facts are pertinent.  Prior to January 29, 1929, defendant held a mortgage on a farm owned by Mr. and Mrs. Parks.  The original loan was $12,000.  By reason of defaults the mortgage indebtedness increased to $13,626.30.  Thereupon, on the date above noted, the farm was deeded to defendant and a contract taken back by Mr. and Mrs. Parks for the purchase of the farm at the amount of the indebtedness.  The land contract contained a chattel mortgage clause covering the stock, tools, farm equipment and other personal property on the premises.  This chattel mortgage was taken by the vendor as additional security for the payment of the contract price.  The vendees defaulted in making payments required by the land contract. Thereafter, in November, 1931, a representative of

defendant together with two other men took possession of the farm buildings and the chattel mortgaged property. There is no claim on the part of defendant that there was foreclosure of either the chattel mortgage or the land contract. The manner in which and the circumstances under which defendant's agents took possession of both the real and personal property of Mr. and Mrs. Parks is the crux of this litigation. It is plaintiff's claim that three men in behalf of the defendant company went to the farm in November, 1931, and that one of these men, Mr. John R. Hudson, then informed Mr. and Mrs. Parks that they were "all through." Mr. Parks testified:

"Mr. Hudson came to my house along with the other two gentlemen mentioned and he told me that I was all through and that I must go that night. That was Thursday. I told Mr. Hudson that it would be impossible and I would not move Thursday night. He says that the buildings are to be locked and that I would have to move. He had not brought back the contract (which plaintiff claimed and offered testimony to show Hudson had previously secured from Parks by a trick) and he put padlocks on the garage, the granary, the tool house and on the barn, and he told me that I would have to move and with no contract. I told Mr. Hudson that it would be impossible for me to move before Saturday. * * * We moved one load of material on Thursday night."

By the following Saturday Mr. and Mrs. Parks had vacated the farm and, with the exception of certain items which they were permitted to take, defendant had taken possession of all the personal property on the farm. It is plaintiff's theory that by the conduct of its agents the defendant company

cancelled and terminated its land contract with Mr. and Mrs. Parks; and that this resulted in releasing Mr. and Mrs. Parks from the obligation to pay the purchase price and *ipso facto* discharged the chattel mortgage obligation. On this ground it is claimed that defendant in taking possession of the personal property acted unlawfully and rendered itself liable in damages for conversion thereof.

On the other hand defendant asserts that the land contract was terminated as the result of a mutual and amicable agreement entered into between Mr. Hudson, representing the defendant, and Mr. and Mrs. Parks. This agreement in brief was that upon the voluntary surrender of possession of the farm and the chattel mortgaged property by Mr. and Mrs. Parks the latter would be released from their obligation to purchase and pay for the farm on the one hand, and on the other the defendant would also be released from its contract obligation. The issue made by these conflicting claims was fairly submitted to the jury under a charge of which appellant has made no just complaint. The legal aspect of the case is somewhat similar to *Schon* v. *Lawrence,* 258 Mich. 543, since it involves the legal proposition that by unlawfully ousting a vendee from possession a vendor may terminate or annul a land contract if the vendee so elects. There is a decided conflict in the testimony. The record discloses no good reason for disturbing the jury's determination. The testimony of Mr. Parks above quoted was given as a part of plaintiff's principal case. Under the record it must be held that appellant was not entitled to a directed verdict either at the close of the testimony in behalf of plaintiff or at the conclusion of all the testimony. In so holding we have not overlooked that on his direct examination Mr.

Parks, as emphasized by appellant, testified as follows:

"*Q.* Had you any knowledge, had you been informed as to their right to come there and take that property on that day?

"*A.* No.

"*Q.* I will ask you whether or not you took it for granted at that time that the Gleaners would have the right to do what they came there and forcibly did?

"*A.* Yes."

And on cross-examination he testified:

"*Q.* When was the first date that any of the personal property that you have mentioned was taken from the farm?

"*A.* On the 13th. * * *

"*Q.* Did you make any objection to that?

"*A.* Not any other than—

"*Q.* You can answer it by yes or no.

"*A.* No, sir. * * *

"*Q.* There was no feeling was there at that time? It was talked over in a friendly manner, wasn't it?

"*A.* Why, what little talk there was on the 13th.

"*Q.* That was friendly talk, wasn't it?

"*A.* Yes, sir."

Notwithstanding the foregoing testimony, clearly there was a question of fact for the jury as to whether possession of the personal property was obtained in the manner asserted by plaintiff or as contended by defendant.

Appellant also claims that, apart from the asserted adjustment of contract obligations, instead of there having been an unlawful or tortious taking of the personal property, the testimony discloses that the property was voluntarily surrendered to

defendant by Mr. Parks; or possibly the transfer of possession resulted from mutual mistake of the parties; or at most, if taking possession was "high handed and unwarranted," this constituted only a breach of the contract, not conversion. The theory of plaintiff's case and the testimony offered in support thereof are wholly inconsistent with the above noted claims of appellant; and the jury's verdict in favor of plaintiff removes such claims from controlling consideration on appeal. Appellant's contention that the verdict was against the great weight of the evidence is not sustained by the record.

Judgment is affirmed, with costs to appellee.

Nelson Sharpe, C. J., and Potter, Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.